UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

NICHOLAS CICCHETTI,

                Plaintiff,                07 Civ. 10546 (WCC)

   -against-

ERNEST D. DAVIS, individually and in his
capacity as Mayor of the City of Mount
Vernon, New York,

                Defendants.

------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PRE-ANSWER MOTION FOR SUMMARY JUDGMENT

#### Preliminary Statement

Plaintiff submits this memorandum of law in opposition to Defendant's pre-answer motion for summary judgment. In that connection a first amended complaint will be filed on January 28, 2008, only portions of which are the subject of the pending motion. Those aspects of the amended complaint that are challenged in the Rule 56 application are addressed *infra*.

In filing the instant motion, movant has not filed a 56.1 statement as required by the Local Rules of the Court. The Rules provide, of course, in that connection that "[f]ailure to submit such a statement may constitute grounds for denial of the motion". We respectfully urge the Court not to deny the motion on that ground, but rather to render a substantive determination on the issues raised by the defense.

<u>The Presently Incontrovertible Facts as Plead</u>

*NATURE OF THE ACTION*

This is an action for compensatory and punitive damages, predicated on conduct engaged in by the Defendant while acting under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983 and 42 U.S.C. §1981 [First Amended Complaint (hereinafter "FAC") at 1].

*THE PARTIES*

Plaintiff Nicholas Cicchetti is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint, except as expressly indicated *infra*, he was the duly appointed Commissioner of the Fire Department (hereinafter "Commissioner") of the City of Mount Vernon, New York (hereinafter "City). At all times relevant to this complaint Plaintiff was, and continues to be, the Vice Chairman of the Democratic Party (hereinafter "Vice Chairman") in the City. As Commissioner Plaintiff's effective job performance had nothing whatsoever to do with either his political affiliation or any shared ideology with the Defendant (FAC at 2).

Defendant Ernest D. Davis (hereinafter "Davis"), who is sued both in his personal and official capacities, at all times relevant to this complaint was the duly elected Mayor of the City. At all times relevant to this complaint prior to a September 2007 primary election in which Davis was successfully challenged by Clinton Young (hereinafter

2

"Young") for the Democratic Party line with respect to the November 2007 mayoral election in the City, Davis was a Democrat supported as such by Plaintiff (FAC at 3).

*THE FACTS*

Following Davis' defeat by Young in the Democratic primary, Plaintiff as Vice Chairman supported Young as the Democratic Party's candidate for election as Mayor of the City (FAC at 5).

Davis, having lost that primary, nevertheless continued his run for re-election as Mayor on the Independence and Conservative Party lines (FAC at 6).

Throughout both the primary and general election campaigns for Mayor, Davis was the subject of repeated, negative news articles and editorials as published by The Westchester Guardian (hereinafter alternatively the "Guardian"), a weekly periodical distributed throughout the County of Westchester by its owner/publisher Selim Zherka (hereinafter "Zherka"). In that connection the Guardian published accounts (hereinafter the Guardian's "speech") of corruption in the Davis administration, characterized Davis - - in connection with a front page headline - - as "DUMB", criticized the wave of shootings and violence that plagued the City during Davis' tenure, reported about the disappearance of substantial federal funds in a program administered by the Davis administration, and *inter alia* expressed optimism that currently pending federal investigations of Davis and his corrupt administration would result in his arrest and prosecution (FAC at 7).

At the general election Young defeated Davis (FAC at 8).

On November 15, 2007, Plaintiff accompanied by Zherka attended a Democratic fundraiser for Young, held a local City restaurant, "Buona Sera" (FAC at 9).

As Plaintiff and Zherka entered the restaurant Davis, who coincidentally was having dinner at Buona Sera, observed them and appeared shocked that Plaintiff was associating with the Guardian's publisher in support of Young as the City's Mayor elect (FAC at 10).

November 16, 2007, Plaintiff received a directive from the Davis' office that the following Monday, he was to meet with Davis at 9:30 A.M. (FAC at 11).

On November 19, 2007, at that meeting Davis accused Plaintiff of being a "traitor", effective immediately terminated his employment as Commissioner, and had Plaintiff removed from his (Plaintiff's) office by the City's police (FAC at 12).

In taking that action Davis was motivated and/or substantially motivated to retaliate against Plaintiff by reason of: i) the Guardian's First Amendment protected speech; ii) Plaintiff's support, as Vice Chairman, of the Democratic Party's candidate for Mayor following Young's defeat of Davis in the primary election; and/or iii) Plaintiff's race (FAC at 13). With respect to the "race" issue, no African-American appointees by Davis were terminated following the November 2007 election. And the only appointee who was fired by Davis was Cicchetti, a Caucasian (FAC at 14).

As a proximate result of Defendant's conduct Plaintiff has been caused to suffer: substantial pecuniary losses; public humiliation; public embarrassment; anxiety; emotional upset; a chilling of the prospective exercise of his First Amendment protected rights; violation of his right to Equal Protection; violation of his rights protected by 42 U.S.C. §1981; and he has otherwise been rendered sick and sore (FAC at 15).

4

*PLAINTIFF'S CLAIMS*

On these facts Plaintiff asserts claims for violations of his First and Fourteenth Amendment rights, 42 U.S.C. §1983, as well as a violation of 42 U.S.C. §1981. As indicated *supra* since the Equal Protection and Section 1981 claims were not asserted in the original complaint, they are not addressed either in Defendant's pending motion or in this memorandum of law.

## POINT I

### PLAINTIFF'S FORMER STATUS AS A COMMISSIONER IS IRRELEVENT TO HIS FIRST AMENDMENT CLAIM

Distilled to its essence Defendant urges, in misplaced reliance upon McEvoy v. Spencer, 124 F.3d 92 (2d Cir. 1997), that because Cicchetti alleges to have been the subject of governmental retaliation as Commissioner of the Fire Department the claim must be dismissed because "there generally is no First Amendment violation when the plaintiff is a policymaker" (Memorandum, unnumbered page three). In reality the McEvoy holding cuts against Defendant.

For in that case the Second Circuit made it clear that the First Amendment exception for policymakers is not so simple in application. Rather, as the Court clearly held:

> "The Court has ruled that the First Amendment prohibits so-called 'patronage' dismissals of most low-level employees, but permits such dismissals for policymakers, **those for whose positions the employer can establish that 'party affiliation**

5

> is an appropriate requirement for the effective performance of the public office involved...This Circuit has interpreted *Branti's* version of the policymaker exception to mean that 'political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance."

In that connection, as a matter of fact alleged in the first amended complaint (FAC at 2), "Plaintiff's effective performance of his office had nothing whatsoever to do with either his political affiliation or shared ideology with the Defendant". In short Plaintiff's First Amendment retaliation claim is viable and must be tried to a jury.

For putting out fires and saving lives is not political and is not susceptible to political ideology. Democrats do not approach a fire from the left. Republicans do not approach a fire from the right. And conservatives do not begin extinguishing blazes from the far right.

### POINT II

### MOVANT'S PICKERING ARGUMENT IS MERITLESS

Tilting at windmills in disregard of the original complaint, movant argues that "Plaintiff's ability to go to a political fundraiser and affiliate with Selim Zherka is not a matter of public concern and thus is not entitled to First Amendment [p]rotection" (Memorandum at unnumbered page four). With respect to this pronouncement, three brief observations are warranted.

6

First neither the complaint nor the first amended complaint allege that Plaintiff's right of association was somehow or other violated because he went to a fundraiser with Mr. Zherka. Second, neither version of the complaint alleges, much less hints, that anyone is contending that attendance at a fundraiser and/or walking into a restaurant while accompanied by Mr. Zherka are matters of public concern.

Third, to the extent that movant's insert a <u>Pickering</u> balancing analysis in the context of a non-existent legal claim, that analysis is simply wrong.

According to the complaint and the first amended complaint, Defendant regarded Plaintiff as a "traitor" at least in substantial respect because of the ideas/opinions contained in <u>The Westchester Guardian</u> as published by Mr. Zherka with respect to Mayor Davis and his corrupt administration. That is, Davis punished Plaintiff for the constitutionally protected expressions of opinion published by Zherka and <u>The Westchester Guardian</u>.

Commissioner Cicchetti, as opposed to Zherka and <u>The Westchester Guardian,</u> "at no time himself" uttered and/or published the First Amendment protected speech as engaged in by either that publisher or that newspaper. Under the circumstances, nothing was said by the Commissioner that could have impaired discipline, impaired harmony amongst City employees/officials, impacted detrimentally close working relationships, impeded anyone's job performance, or interfered with the City's services or operations.

Indeed if any component of movants parade of horribles were grounded in fact, the effect on the City and/or its workforce was causally the product only of speech actually engaged in by Zherka and his periodical.

In any event, Defendant's argument ignores material facts. According to the complaint and the first amended complaint Zherka and The Westchester Guardian engaged in the at-issue protected speech during only "the primary and general election campaigns for Mayor" (FAC at 7). Davis fired Plaintiff following both campaigns, on the basis of protected speech he imputed to Cicchetti for the first time after the general election - - when Davis was a very, very lame duck. Since there was a new mayor elect, and Davis' stint as that office holder was but weeks away from coming to an end, the notion that following his defeat at the polls in November the workplace would and/or could have been disrupted because of pre-election speech is simply unpersuasive.

It also raises issues of fact that cannot, under the peculiar circumstances of this case, be decided on paper without any evidence that movant's speculative hypothesis has any validity.

## POINT III

## MOVANT'S THIRD PARTY STANDING ARGUMENT IS MERITLESS

According to movants (Memorandum at unnumbered pages five-six):

> "In order for plaintiff to even assert third-party standing, he would have to show an injury-in-fact as well as an inability of Selim Zherka or the Westchester Guardian to protect their own interests. Neither is alleged in the complaint."

We disagree.

8

Plaintiff's injury-in-fact was his termination of employment as Commissioner. And since it is obvious that neither Zherka nor The Westchester Guardian suffered any injury/damages whatsoever by reason of that termination, neither of them could have articulated a viable claim for damages. Put differently, neither could have taken any legal action to "protect their own interests" in this context - - a circumstance that is clear from the complaint and the first amended complaint.

## CONCLUSION

The motion for judgment should in all respects be denied.

Dated: White Plains, N.Y.
       January 25, 2008

LOVETT & GOULD, LLP
By: _____
    Jonathan Lovett
Attorneys for Petitioner
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401