```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                                                07 Civ. 10546 (WCC)
NICHOLAS CICCHETTI,                       :
                                                    ECF CASE
                Plaintiff,                :

        - against -                       :         OPINION
                                                    AND ORDER
ERNEST D. DAVIS, individually, and in     :
his capacity as Mayor of the City of
Mount Vernon, New York,                   :

                Defendant.                :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                LOVETT & GOULD, LLP
                **Attorneys for Plaintiff**
                222 Bloomingdale Road
                White Plains, New York 10605

JONATHAN LOVETT, ESQ.
    Of Counsel

                HELEN M. BLACKWOOD, ESQ.
                OFFICE OF THE CORPORATION COUNSEL
                **Attorneys for Defendant**
                City Hall
                One Roosevelt Square
                Mount Vernon, New York 10550

HINA SHERWANI, ESQ.
    Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff Nicholas Cicchetti brings suit against defendant Ernest D. Davis, individually and in his official capacity as Mayor of the City of Mount Vernon, New York. At all times relevant to this action, plaintiff was the Fire Commissioner of Mount Vernon. Plaintiff alleges that defendant fired him because of his political beliefs and associations, thus violating plaintiff's First Amendment Rights. Plaintiff also claims that the termination was motivated at least in part by his race. Defendant now moves for summary judgment on the ground that he was free to terminate plaintiff's employment for political reasons because plaintiff was a policymaker as defined by *Elrod v. Burns*, 427 U.S. 347 (1976). For the following reasons, the motion is denied.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.

Defendant appointed plaintiff Fire Commissioner on January 1, 2001. (Sherwani Aff'm ¶ 3.) In September 2007, defendant lost the Democratic mayoral primary to Clinton Young and ran for re-election on the Conservative and Independence Party lines. (1st Am. Complt. ¶¶ 4, 6.) During the general election campaign, plaintiff, who was Vice Chairman of the Democratic Party in Mount Vernon, supported Young. (*Id.* ¶¶ 3-5.) Young defeated defendant in the November 2007 general election. (*Id.* ¶ 8.)

During both the primary and general election campaigns, the *Westchester Guardian*, a local newspaper, published a series of negative news articles and editorials about defendant. The *Guardian* alleged corruption in defendant's administration, complained of the high level of violent crime in Mount Vernon during defendant's tenure as mayor and expressed hope that a then-pending

federal investigation of defendant's administration would lead to his arrest and prosecution. (*Id.* ¶ 7.) The *Guardian* also ran a headline calling defendant "DUMB." (*Id.*)

On November 15, 2007, shortly after the election, a fund-raising dinner for mayor-elect Young was held at a local restaurant. (*Id.* ¶¶ 9-10.) Plaintiff attended the dinner, accompanied by Selim Zherka, the publisher of the *Guardian*. (*Id.* ¶¶ 7, 9.) By coincidence, defendant happened to be dining at the same restaurant that night, and he "appeared shocked that Plaintiff was associating with the Guardian's publisher in support of Young." (*Id.* ¶ 10.) The next day, plaintiff received an order to report to defendant's office the following Monday, November 19, 2007. (*Id.* ¶¶ 11-12.) At that meeting, plaintiff alleges, defendant called him a "traitor," terminated his employment as Fire Commissioner (effective immediately) and had the police remove plaintiff from plaintiff's office.[1] (*Id.* ¶ 12.) Plaintiff alleges that defendant's decision to fire him was motivated by the *Guardian*'s negative coverage of defendant, plaintiff's support for Young in the general election and/or plaintiff's race. (*Id.* ¶ 13.)

**DISCUSSION**

Defendant did not answer the First Amended Complaint, but chose to file this motion instead. In his moving papers, defendant does not deny any of plaintiff's material factual allegations; instead, defendant simply argues that he had the right to fire plaintiff for political reasons because the Mount Vernon Fire Commissioner is a policymaker who serves at the pleasure of the Mayor.

---

[1] Plaintiff was subsequently appointed Assistant Water Superintendent by Water Commissioner David Ford on January 1, 2008. (Sherwani Aff'm ¶ 3.)

I.      **Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The Court must resolve all ambiguity in favor of the non-moving party and draw every permissible factual inference in that party's favor. *See Anderson*, 477 U.S. at 255. The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). When the movant has met that burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P 56(e)) (citations omitted) (emphasis in original).

II.     **Plaintiff's First Amendment Claim**

The first issue before the Court is whether terminating plaintiff's employment because of his political beliefs or associations violated plaintiff's First Amendment rights. "As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights." *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995); *Butler v. N.Y. State Dep't of Law*, 998 F. Supp. 336, 339 (S.D.N.Y. 1998). Those rights include freedom of political speech, belief and

3

association. *See Elrod*, 427 U.S. at 367. The Supreme Court has recognized, however, that political loyalty is a legitimate job criterion for certain government employees. *See Branti v. Finkel*, 445 U.S. 507, 517 (1980); *Elrod*, 427 U.S. at 367; *Butler*, 998 F. Supp. at 339. Those employees, known as policymakers, "hold their office at the will of their employer, and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity." *Kaluczky*, 57 F.3d at 208.

In determining whether a public employee may legitimately be terminated because of his political expressions or beliefs, the key inquiry is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. The Second Circuit has interpreted *Branti* to mean that party affiliation is an appropriate job requirement where there is a "rational connection between shared ideology and job performance." *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988). Several specific factors are relevant to the inquiry:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994). The last five factors can be condensed into the question "whether the employee . . . is empowered to act and speak on behalf of a policymaker, especially an elected official." *Gordon v. County of Rockland*, 110 F.3d 886, 890 (2d Cir. 1999). Other indications of policymaker status include direct appointment by an elected official, *see Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 170 (E.D.N.Y. 2005), and "authority to receive and transmit confidential information." *Danahy v. Buscaglia*, 134 F.3d 1185, 1192 (2d Cir. 1998).

These factors should be applied to the formal description of the job at issue – in other words, to the inherent powers of the position – rather than the duties actually performed by the plaintiff. *See Regan*, 984 F.2d at 580; *Gordon*, 110 F.3d at 888. Whether an employee is a policymaker is a question of law for the Court, although it requires a factual inquiry into the nature of the position. *See Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir. 2007). Policymaker status is an affirmative defense on which the defendant bears the burden of proof. *See Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 103 (W.D.N.Y. 2005); *Catone v. Spielmann*, 966 F. Supp. 1288, 1296 (N.D.N.Y. 1997); *McDermott v. Pataki*, 1996 U.S. Dist. LEXIS 15338, *6-7 (N.D.N.Y. Oct. 15, 1996).

The Code of the City of Mount Vernon provides that the Mayor shall appoint a Fire Commissioner to serve at his pleasure. MOUNT VERNON, N.Y., CODE § 14. The Fire Commissioner "control[s] . . . the government, administration, disposition and discipline of the Fire Department, and . . . the officers and members of said Department," as well as "the general direction and supervision of the expenditure of all moneys appropriated to said Department." *Id.* § 127-a. The Commissioner has the authority to hire subordinates, who serve at his pleasure. *Id.* § 127. And the Commissioner is empowered to make rules and regulations for the department. *Id.* § 127-b. Finally, the Commissioner has authority over fire-department disciplinary issues: he prescribes the form in which disciplinary charges must be made and conducts hearings on any charges brought against a member of the department. *Id.* § 127-e. The Commissioner has subpoena power, as well at the power to punish Department members by reprimanding them, docking their pay or firing them. *Id.*

It is clear that the Mount Vernon Fire Commissioner has a substantial amount of authority over the Fire Department and its members, but defendant has failed to demonstrate that the

5

Commissioner is a policymaker within the meaning of *Elrod* and *Branti*. Several *Vezzetti* factors do indicate policymaker status. Plaintiff was exempt from civil service protection, *see Vezzetti*, 22 F.3d at 486, and was directly appointed by, and served at the pleasure of, an elected official. *See Alberti*, 393 F. Supp. 2d at 170. Given the Commissioner's broad rule-making and disciplinary authority, it is fair to say that he "controls others" and "influences government programs." *See Vezzetti*, 22 F.3d at 486.

However, defendant has failed to suggest any way in which there is a "rational connection between shared ideology and job performance" in this context, s*ee Regan*, 984 F.2d at 580, and no such connection is immediately apparent to the Court. The factual record is too sparse for us to make that determination conclusively or apply the remaining *Vezzetti* factors. The record consists entirely of copies of the Mount Vernon Code provisions discussed above and plaintiff's "Roster Card," which notes his civil service exemption, dates of employment and salary.[2] (*See* Sherwani Aff'm, Exs. B-D.) Neither of these sources indicates whether the fire commissioner has "technical competence or expertise," "is authorized to speak in the name of policymakers," "is perceived as a policymaker by the public," "has contact with elected officials," or "is responsive to partisan politics and political leaders." *See Vezzetti*, 22 F.3d at 486. Although ordinary experience may suggest answers to some of these questions, those answers are not so easily and objectively verifiable that

---

[2] Defendant's Rule 56.1 Statement of Undisputed Facts consists of legal conclusions such as "The Fire Commissioner is a policymaker" and unsupported, conclusory statements such as "The Fire Commissioner's position demands political loyalty" and "The Fire Commissioner is a spokesperson for the city." (Def. Rule 56.1 Stmt. ¶¶ 13, 16, 23.) This does not advance the Court's inquiry.

the Court could take judicial notice of them. *See* FED. R. EVID. 201.[3] With the limited information we have in front of us, we could only speculate as to the determination of these factors – and, more importantly, as to the relevance of shared ideology – which we decline to do.

Although policymaker status is a question of law, the inquiry is fact intensive, and the Court lacks the factual information necessary to decide the issue. We do not hold that the Fire Commissioner of Mount Vernon is not a policymaker; it may well be that he is. The record simply does not enable us to answer the question at this time. Defendant's motion is premature.

### III.   Third-Party Standing

Plaintiff seeks to assert the First Amendment rights of the *Guardian* and Zherka on a third-party standing basis. (*See* 1st Am. Complt. ¶ 17; Pl. Mem. Opp. Summ. J. at 9.) Defendant argues that plaintiff has failed to allege facts necessary to support third-party standing. (*See* Def. Mem. Supp. Summ. J. at 5-6.)

As a general rule, a litigant must "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This is not a Constitutional mandate, but rather "a prudential limitation created by the courts." *Farrell v. Burke*, 449 F.3d 470, 494-95 (2d Cir. 2006). Third-party standing will be allowed, however, if the plaintiff can demonstrate: "(1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own

---

[3] Fed. R. Evid. 201(b) permits courts to take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

interests.'" *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003) (quoting *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998)).  Although third-party standing is generally disfavored, the Supreme Court has been "quite forgiving" with the criteria in certain circumstances, including First Amendment cases.  *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

We conclude that plaintiff has third-party standing to assert the First Amendment rights of Zherka and/or the *Guardian*.  First, plaintiff has alleged an injury-in-fact to himself: defendant fired him.  The second factor is a somewhat closer call.  All we know about plaintiff's relationship with the *Guardian* and its publisher is that plaintiff accompanied Zherka to a fund-raising dinner for Young.  (*See* 1st Am. Complt. ¶ 9.)  The relationship may or may not have been "close" in the conventional sense of the term, but that is not the key to the inquiry.  There is no requirement that the plaintiff and the third party be intimately associated.  *See Camacho v. Brandon*, 69 F. Supp. 2d 546, 551 (S.D.N.Y. 1999) (Conner, J.), *reversed on other grounds by Camacho*, 317 F.3d at 156; *cf. Craig v. Boren*, 429 U.S. 190, 196-97 (1976) (holding that a beer vendor had third-party standing to assert constitutional claims of potential consumers).  For purposes of establishing third-party standing, the more relevant considerations are whether the Constitutional right at issue "is inextricably bound up with the activity the litigant wishes to pursue," and whether the litigant will be "fully, or very nearly, as effective a proponent" of the third party's rights as the third party would be.  *See Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976); *Camacho*, 69 F. Supp. 2d at 551 ("The requirement of a 'relationship' between the plaintiff and the third-party exists to ensure that the third-party's constitutional rights will be effectively advocated by the plaintiff.").

Here, the free speech and publication rights of the *Guardian* and its publisher are clearly "bound up" with the rights of others, such as plaintiff, to associate with them without retaliation

8

therefor. And there is no reason to doubt that plaintiff will be an effective advocate for the rights of Zherka and the *Guardian*. Therefore, the second element of third-party standing has been satisfied.

Finally, there is an obstacle preventing the third parties from asserting their own rights: they do not appear to have suffered any direct injury or damages as a result of defendant's conduct, so they could not have brought suit themselves. *See Camacho*, 317 F.3d at 160. Nevertheless, the First Amendment rights of Zherka and the *Guardian* are implicated in this matter. There is an obvious possibility of a chilling effect on free speech where, as alleged here, a public official retaliates against an associate of a speaker whose speech the official finds offensive. *Cf. Camacho*, 317 F.3d at 159-60 (holding that a legislative aid fired in retaliation for a legislator's vote had third-party standing to assert the legislator's First Amendment rights). Plaintiff has third-party standing to assert the First Amendment rights of Zherka and the *Guardian*.

### IV.    Plaintiff's Other Claims

Plaintiff also asserts claims under the Fourteenth Amendment (pursuant to 42 U.S.C. § 1983) and 42 U.S.C. § 1981. The parties have not briefed the legal issues raised by these claims, but defendant seeks dismissal of the action as a whole, so we will consider their viability. (*See* Def. Mem. Supp. Summ. J. at 6.)

The First Amended Complaint identifies plaintiff as Caucasian. (1st Am. Complt. ¶ 3.) It also alleges that defendant's decision to terminate plaintiff's employment was motivated, at least in part, by plaintiff's race. (*Id.* ¶ 13.) Plaintiff claims to have been singled out on the basis of his race in that, after the November 2007 election, defendant fired him but placed defendant's African-

American appointed officials on forced vacation status with full salary and benefits. (*See id.* ¶ 14.)

As the moving party, defendant bears the burden of showing that there is no genuine issue of material fact as to these claims. *See Celotex*, 477 U.S. at 322. Defendant's moving papers do not explain why summary judgment is appropriate, and there is no factual record from which the Court could make that determination for itself. The motion for summary judgment as to plaintiff's section 1981 and 1983 claims is therefore denied.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is denied without prejudice to renewal after adequate discovery.

SO ORDERED.

Dated: White Plains, New York
       March 5, 2007

*[signature]*
Sr. United States District Judge