```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------X
                                            07 Civ. 10546 (WCC)
NICHOLAS CICCHETTI,                  :
                                            ECF CASE
                 Plaintiff,          :

       - against -                   :      OPINION
                                            AND ORDER
ERNEST D. DAVIS, individually, and in:
his capacity as Mayor of the City of
Mount Vernon, New York,              :

                 Defendant.          :
-----------------------X
```

**A P P E A R A N C E S :**

                                       LOVETT & GOULD, LLP
                                       **Attorneys for Plaintiff**
                                       222 Bloomingdale Road
                                       White Plains, New York 10605

JONATHAN LOVETT, ESQ.

       Of Counsel


                                       HELEN M. BLACKWOOD, ESQ.
                                       OFFICE OF THE CORPORATION COUNSEL
                                       **Attorneys for Defendant**
                                       City Hall
                                       One Roosevelt Square
                                       Mount Vernon, New York 10550

HINA SHERWANI, ESQ.

       Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Nicholas Cicchetti brings suit under 42 U.S.C. §§ 1981 and 1983 against defendant Ernest D. Davis, individually and in defendant's official capacity as Mayor of the City of Mount Vernon, New York. At all times relevant to this action, plaintiff was the Fire Commissioner of Mount Vernon ("Fire Commissioner"). Plaintiff alleges that defendant fired him because of his political beliefs and associations, in violation of plaintiff's First Amendment rights. Plaintiff also claims that defendant fired him because of plaintiff's race. Additionally, plaintiff brings First Amendment claims as a third party. Defendant made a pre-discovery motion for summary judgment on all counts in the Complaint on the ground that he was free to terminate plaintiff's employment for political reasons because plaintiff was a "policymaker" as defined in *Elrod v. Burns*, 427 U.S. 347 (1976). We denied that motion in an Opinion and Order dated March 5, 2008 because the record before us was insufficient to decide whether plaintiff was a "policymaker," and we granted defendant leave to renew the motion after adequate discovery. *Cicchetti v. Davis*, 2008 WL 619013, at *1 (S.D.N.Y. Mar. 5, 2008) (Conner, J.). Defendant now renews his motion for summary judgment. For the reasons stated herein, defendant's motion is granted in part and denied in part.

### BACKGROUND

Plaintiff was appointed to the position of Fire Commissioner by defendant on January 1, 2001. (Sherwani Aff'm ¶ 8.) Plaintiff contends that defendant did not consider political affiliation to be relevant to the position of Fire Commissioner. (Pl. R. 56.1 Stmt. ¶¶ 4, 26 (*citing* Davis Tr. at 14, 63-65, 82).) Plaintiff also contends that, at the time defendant made this appointment, defendant knew that plaintiff had no specialized training or skills to become Fire Commissioner. (Pl. R. 56.1

1

Stmt. ¶¶ 1-3 (*citing* Davis Tr. at 15, 110, 11 *and* Cicchetti Tr. at 8-9, 74).)

Regarding the nature of plaintiff's work as Fire Commissioner, plaintiff states that defendant "micromanaged" the "Department Heads," requiring that they obtain defendant's prior approval in order to prefer disciplinary charges, that defendant had the "final say" in the hiring process, that defendant did not permit plaintiff to speak publicly on behalf of defendant, that plaintiff was never permitted to attend public sessions of the City Council or address its members on behalf of defendant and that plaintiff never attended any function or event on behalf of Mount Vernon.  (*Id*. ¶¶ 29-32, 40.)  Plaintiff states that he did not swear in new firefighters, did not create any policies regarding overtime, did not get involved in fire management decisions, was not responsible for policies, had no responsibility as to firefighters' uniforms and had no discretionary authority over firefighters' receipt of job injury benefits.  (*Id*. ¶¶ 36, 38, 41.)

According to defendant's description of the nature of plaintiff's work as Fire Commissioner, plaintiff had the statutory authority to promulgate the "Fire Department's Rules and Regulations"[1] and that "all [employees] reported to [plaintiff]." (Def. R. 56.1 Stmt. ¶¶ 3-4.)  Defendant contends that the Fire Commissioner is the "ultimate decision maker in his agency," that the position is a "politically appointed one" and that the Fire Commissioner "represented the Mayor and the City in speaking to the media."[2]  (Def. R. 56.1 Stmt. ¶¶ 7-9.)  The Fire Commissioner is exempt from Civil Service and, according to defendant, "possesses general control and direction of the Fire Department's budget."  (*Id*. ¶¶ 17-18.)  Defendant also avers that plaintiff applied for federal grants

---

[1] Plaintiff disputes this.  He avers that the City Council enacts the Rules and Regulations as part of the City Charter.  (Pl. R. 56.1 Counterstmt. ¶ 3.)

[2] Plaintiff disputes each of those claims.  (Pl. R. 56.1 Counterstmt. ¶¶ 7-9.)

and interacted with the City Council and State Senator Guy Velella. (*Id*. ¶¶ 19-22.)

In September 2007, defendant ran for re-election as Mayor in the Democratic primary and was defeated by Clinton Young. *Cicchetti*, 2008 WL 619013, at *1. Following his defeat in the primary, defendant ran for re-election in the general election on the Conservative and Independent party lines. *Id*. Young defeated defendant in the November 2007 general election. *Id*. During both the primary and general election campaigns, a local newspaper, the *Westchester Guardian* (the "*Guardian*"), published a series of negative articles and editorials about defendant. *Id*. The *Guardian* alleged that defendant's administration was corrupt, complained of the high level of violent crime in Mount Vernon during defendant's tenure as Mayor and expressed hope that a then-pending federal investigation of defendant's administration would lead to his arrest and prosecution. *Id*. The *Guardian* also ran a headline calling defendant "DUMB." *Id*.

On November 15, 2007, shortly after the general election, plaintiff attended a fund-raising dinner for mayor-elect Young at a local restaurant, accompanied by Selim Zherka ("Zherka"), the publisher of the *Guardian*. *Id*. Coincidentally, defendant was also dining at the same restaurant that evening and "'appeared shocked that [p]laintiff was associating with the [*Guardian*]'s publisher in support of Young.'" *Id*. (internal citation omitted).

The day after the fund-raising dinner, plaintiff received an order to report to defendant's office for a meeting to take place the following Monday, November 19, 2007. *Id*. At that meeting, plaintiff alleges that defendant called him a "traitor," terminated his employment as Fire Commissioner, effective immediately, and instructed that police remove plaintiff from plaintiff's

3

office.³  *Id*.  Plaintiff contends that he was the "only non-African that was fired" after defendant's defeat in the 2007 election.⁴  (Pl. R. 56.1 Stmt. ¶ 25 (*citing* Cicchetti Tr. at 71).)

Plaintiff alleges that defendant's decision to fire him was motivated by the *Guardian*'s negative coverage of defendant, plaintiff's support for Young in the general election and/or plaintiff's race.

## DISCUSSION

**I.     Legal Standard**

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986).  A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248.  The burden rests on the movant to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the Court resolves all ambiguities and draws all permissible factual inferences against the movant.  *See Anderson*, 477 U.S. at 255.  To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v.*

---

³ Following plaintiff's termination, he was appointed to the position of Assistant Water Superintendent by the Water Commissioner on January 1, 2008.  (*Id*.)

⁴ Plaintiff is Caucasian.  (Pl. Mem. Opp. Summ. J. at 1.)

*Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nevertheless, as one court explained:

> [S]ummary judgment must be granted against a party in instances when such party fails to adequately establish an essential element on which it bears the burden of proof. . . . The non-moving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials of the adverse party's pleading, but must set forth and establish specific facts showing that there is a genuine issue for trial. . . . A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue necessitating a trial. . . . The mere existence of a scintilla of evidence supporting the non-movant's case is insufficient to defeat a motion for summary judgment.

*Brooks v. Di Fasi*, 1997 U.S. Dist. LEXIS 11162, at *6-7 (W.D.N.Y. July 30, 1997) (internal quotation marks and citations omitted).

## II.     First Amendment Claim

Defendant contends that he was free to terminate plaintiff's employment on the basis of plaintiff's political beliefs or associations and that such termination did not violate plaintiff's First Amendment rights. "As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights," *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995), however, the Supreme Court has recognized an exception to this rule where political loyalty is a legitimate criterion for a position. *Branti v. Finkel*, 445 U.S. 507, 517 (1980); *see also Elrod*, 427 U.S. at 367; *and Butler v. N.Y. State Dep't of Law*, 998 F. Supp. 336, 339 (S.D.N.Y. 1998). Employees holding positions for which political loyalty is a requirement, which employees are known as policymakers, "hold their office at the will of their employer, and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity."

*Kaluczky*, 57 F.3d at 208.  A defendant may raise an employee's status as a policymaker as an affirmative defense to a suit predicated on alleged infringements of the employee's First Amendment rights and the defendant bears the burden of proof.  *Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 103 (W.D.N.Y. 2005).  Whether an employee is a policymaker is a question of law for the Court, though it requires a factual inquiry into the nature of the job itself.  *Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir. 2007).  In weighing whether an employee is a policymaker, the Court should consider the objective, inherent duties of the position, rather than the manner in which the particular plaintiff in fact discharged his duties.  *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993).

### A. Plaintiff's First Amendment Claim Against Defendant in Defendant's Individual Capacity

The doctrine of qualified immunity shields government agents from liability for their official actions, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Almonte*, 478 F.3d 110.  An official is entitled to qualified immunity where: (1) the plaintiff has not alleged a violation of a constitutional right; (2) the right was not clearly established at the time of the conduct; or (3) the official's actions were not objectively unreasonable in light of clearly established law.  *Id.*

Neither party has cited, nor is this Court aware of, any controlling case law that specifically holds that, inherently, the position of Fire Commissioner is one that falls under the category of

"policymaker."[5]  Further, courts have recognized that the "*Elrod-Branti* guidelines do not lend themselves to easy or automatic application."  *Beckmann v. Darden*, 351 F. Supp. 2d 139, 145 (S.D.N.Y. 2004), *citing Hawkins v. Steingut*, 829 F.2d 317, 320 (2d Cir. 1987) (internal quotation marks omitted).  As a result, we cannot hold that plaintiff's right not to be dismissed based on his political affiliations was "clearly established."

Moreover, even if that right was clearly established, defendant would be entitled to qualified immunity because his actions were not objectively unreasonable as officers of reasonable competence could disagree on whether plaintiff was a policymaker.  *Danahy v. Buscaglia*,134 F.3d 1185, 1190 (2d Cir. 1998) ("[A] government official's actions will be considered objectively reasonable if officers of reasonable competence could disagree on the legality of the defendant's actions.") (internal quotation marks and citation omitted).  As we noted in our previous Opinion, several factors tend to indicate that plaintiff's position was that of a policymaker, including, *inter alia*, that "[p]laintiff was exempt from civil service protection, . . . was directly appointed by, and served at the pleasure of, an elected official . . . [and] controls others and influences government programs."  *See Cicchetti*, 2008 WL 619013, at *3 (internal quotation marks and citations omitted).  Moreover, during defendant's deposition, he gave several indications that he understood plaintiff's position to be one of a policymaking nature: (1) he stated that he appointed plaintiff in part because he believed that plaintiff was "loyal" and that the appointment made "political sense," (2) he stated that he was "concerned that [plaintiff] . . . carries out the ideology of the elected official [defendant]" and (3) he stated that the job of the Fire Commissioner is to "make sure that the [fire department is]

---

[5]  Although, the Second Circuit has held that a police commissioner is a policymaker.  *See McEvoy v. Spencer*, 124 F.3d 92 (2d Cir. 1997).

7

running according to the philosophy and the management and the concerns that the mayor has." (Davis Dep. at 15-16, 63, 50).  We cannot hold that, as a matter of law, officers of reasonable competence could not disagree on whether plaintiff was a policymaker.  As discussed in greater detail below, we do not find that plaintiff *was* a policymaker, although we find that defendant's actions were not unreasonable, as officers of reasonable competence could disagree on whether plaintiff was a policymaker.  Therefore, defendant is entitled to qualified immunity with respect to plaintiff's First Amendment claim against defendant in defendant's individual capacity.

### B.    Plaintiff's First Amendment Claim Against Defendant in Defendant's Official Capacity

Plaintiff has sued defendant in both his official and his individual capacities.  As discussed above, defendant is entitled to qualified immunity as to plaintiff's claim against defendant in defendant's individual capacity.  We turn now to the question of whether plaintiff was in fact a policymaker, such that defendant, in his official capacity, did not violate plaintiff's First Amendment rights by terminating plaintiff's employment based on plaintiff's First Amendment activities.

"[T]he ultimate inquiry is not whether the label 'policymaker' . . . fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518.  The Second Circuit has interpreted *Branti* to mean that, in order to find that "political affiliation is an appropriate requirement," there must be a "rational connection between shared

ideology and job performance."[6]  *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988).

In our previous Opinion in this case, we reviewed the job description of the Fire Commissioner under the Code of the City of Mount Vernon and found that the Fire Commissioner "has a substantial amount of authority," including, *inter alia*, discipline, general direction and supervision of the department expenditures, authority to hire subordinates and subpoena power. *Cicchetti*, 2008 WL 619013, at *3, *citing* MOUNT VERNON, N.Y. CODE §§ 14, 127, 127-a, 127-b, 127-e.  We also found, however, that "defendant ha[d] failed to demonstrate that the Commissioner is a policymaker" because "defendant ha[d] failed to suggest any way in which there [was] a rational connection between shared ideology and job performance."  *Cicchetti*, 2008 WL 619013, at *3-4 (internal quotation marks and citation omitted).  We granted leave for defendant to renew his motion and now consider whether subsequent discovery has yielded evidence from which we could determine that such a rational connection existed.

In this renewed motion for summary judgment, defendant again directs us to the Code of the City of Mount Vernon in support of his contention that plaintiff was a policymaker.  (Def. Mem. Supp. Summ. J. at 2-3).  As we have already fully considered the job description as set forth in the Code of the City of Mount Vernon and found that it does not provide definitive guidance as to

---

[6] The Second Circuit has set forth several specific factors to consider in this inquiry: whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.
*Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994).

9

whether plaintiff was a policymaker, defendant's reliance on the job description therein does not advance this Court's inquiry. The only other evidence that defendant provides in support of his argument that plaintiff was a policymaker is specific examples of actions that plaintiff took as Fire Commissioner, including: (1) plaintiff's testimony at a hearing involving disability benefits and leave time for a firefighter during the September 11th attacks; (2) plaintiff's participation in a televised debate regarding the City's "Mutual Aid Policies;" and (3) the fact that citizens have asked plaintiff about policies of the fire department of Mount Vernon. (*Id.* at 3-4; Sherwani Reply Aff'm ¶ 20.) However, this evidence speaks to plaintiff's specific manner of discharging the duties of his position and it is well settled that only the job description, and not the way in which the job was carried out, will control in the inquiry of whether plaintiff was a policymaker. *Regan*, 984 F.2d 580. Here, defendant has failed to provide us with any additional information regarding the job of Fire Commissioner that indicates that performance of the position is rationally connected to a shared ideology, and that thereby establishes that the position is one of a policymaking nature. In other words, defendant has not met his burden to establish the policymaker exception as an affirmative defense. Therefore, defendant's motion for summary judgment as to plaintiff's First Amendment claim against defendant in defendant's official capacity is denied.

### III. Third-Party Standing

Plaintiff also alleges that defendant violated the First Amendment rights of the *Guardian* and its publisher, Zherka, and plaintiff now asserts those claims against defendant on a third-party standing basis, pursuant to 42 U.S.C. § 1983. Defendant argues that plaintiff's third-party claims should be dismissed because plaintiff does not meet the standard for assertion of third-party rights.

Defendant makes no new arguments in support of summary judgment beyond those arguments that he made in his previous motion and does not appear to assert qualified immunity as a defense to these claims. We decline to address the third-party standing claims as we have already comprehensively considered them and ruled that "plaintiff has third-party standing to assert the First Amendment rights of Zherka and/or the *Guardian*." *Cicchetti*, 2008 WL 619013, at *5.

**IV.     Race Claims**

Plaintiff also asserts claims under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981. While neither party has fully briefed these claims, they appear to stem from plaintiff's assertion that his termination was based, in part, on the fact that he is Caucasian. Defendant does not appear to assert a qualified immunity defense to these claims.

Defendant's moving papers state only that plaintiff's race-based claim of discrimination must fail because plaintiff is a policymaker, therefore, excluded from the definition of "employee" under Title VII and, as a result, not entitled to invoke the protections of Title VII. (Sherwani Reply Aff'm ¶¶ 31-35 (*citing Butler v. N.Y. State Dep't of Law*, 211 F.3d 739 (2d Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).) However, plaintiff does not appear to have made any claim under Title VII.[7] (*See* First Am. Complt; *see also Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1005 (W.D. Tex. 2000) (refusing to "reason by analogy [Title VII] to § 1983").) Defendants do not offer any explanation as to why plaintiff's §§ 1981 and 1983 claims should be

---

[7] We note that even assuming that plaintiff did bring a claim under Title VII and assuming that we dismissed that claim under the theory that he was not an "employee" under the terms of Title VII, such a conclusion would not preclude plaintiff from asserting claims under §§ 1981 or 1983 based on alleged race discrimination. *See Beckmann*, 351 F. Supp. 2d 145 n.8.

dismissed or why plaintiff should not be entitled to invoke §§ 1981 or 1983. Because defendant's sole argument in favor of summary judgment on plaintiff's race claims depends on the definition of a term in a statute that does not appear to have been invoked, defendant has not met his burden as the moving party to prove that there are no genuine issues of material fact as to plaintiff's race claims. *Celotex*, 477 U.S. at 322. Defendant's motion for summary judgment as to plaintiff's claims of racial discrimination pursuant to §§ 1981 and 1983 is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. # 11) dismissing plaintiff's First Amendment claim brought against defendant in defendant's individual capacity is granted, defendant's motion for summary judgment dismissing plaintiff's First Amendment claim brought against defendant in defendant's official capacity is denied, defendant's motion for summary judgment dismissing plaintiff's First Amendment claim brought on behalf of a third party is denied and defendant's motion for summary judgment dismissing plaintiff's race-based claims under 42 U.S.C. §§ 1981 and 1983 is denied.

SO ORDERED.

Dated: White Plains, New York
       January 26, 2009

_____
Sr. United States District Judge