UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

                                 07 Civ. 10546 (WCC)

NICHOLAS CICCHETTI,              :

                            **ECF CASE**

              Plaintiff,     :

        - against -           :        **OPINION
                                         AND ORDER**

ERNEST D. DAVIS, individually, and in  :
his capacity as Mayor of the City of
Mount Vernon, New York,          :

             Defendant.    :

- - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              LOVETT & GOULD, LLP
                              **Attorneys for Plaintiff**
                              222 Bloomingdale Road
                              White Plains, New York 10605

JONATHAN LOVETT, ESQ.

       Of Counsel

                              HELEN M. BLACKWOOD, ESQ.
                              OFFICE OF THE CORPORATION COUNSEL
                              **Attorneys for Defendant**
                              City Hall
                              One Roosevelt Square
                              Mount Vernon, New York 10550

HINA SHERWANI, ESQ.
NICHELLE JOHNSON, ESQ.

       Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Nicholas Cicchetti brings suit against defendant Ernest D. Davis in his capacity as Mayor of the City of Mount Vernon, New York, for allegedly violating plaintiff's First Amendment rights by firing plaintiff because of plaintiff's political associations. Defendant made a pre-discovery motion for summary judgment on the ground that he was free to terminate plaintiff's employment for political reasons because plaintiff was a "policymaker" as defined in *Elrod v. Burns*, 427 U.S. 347 (1976). We denied that motion in an Opinion and Order dated March 5, 2008 because the record before us was insufficient to decide whether plaintiff was a policymaker. *Cicchetti v. Davis*, 2008 WL 619013, at *1 (S.D.N.Y. Mar. 5, 2008) (Conner, J.). Defendant then renewed his motion and, in an Opinion and Order dated January 26, 2009, we found, *inter alia*, that defendant was entitled to qualified immunity on plaintiff's First Amendment claim because it was reasonable for defendant to believe that plaintiff was a policymaker; however, we found that defendant had still not met his burden to prove, as a matter of law, that plaintiff was a policymaker. *Cicchetti v. Davis*, 2009 WL 222379, at *3-5 (S.D.N.Y. Jan. 26, 2009) (Conner, J.).

On March 25, 2009, following a trial before this Court, a jury found that plaintiff's political activity was a substantial or motivating factor in defendant's decision to terminate plaintiff's employment.[1] We now consider, in light of the evidence presented during the trial and the special interrogatories answered by the jury, whether defendant has met his burden to prove that he is entitled to the affirmative defense that plaintiff was a policymaker. For the reasons stated herein, we find that defendant is entitled to judgment as a matter of law.

---

[1] That jury also found that plaintiff did not meet his burden to establish his second claim in this case, that his race or color was a substantial motivating factor in defendant's decision to terminate plaintiff's employment.

1

**BACKGROUND**

The facts of this case are set forth extensively in our previous opinions, familiarity with which is presumed. Accordingly, we recite only the facts relevant to our resolution of this issue and background facts that may be helpful in providing context.

At all times relevant to this action, plaintiff was the Fire Commissioner of the City of Mount Vernon, New York ("Fire Commissioner"). Plaintiff was appointed to that position by defendant on January 1, 2001. In September 2007, defendant ran for renomination as Mayor in the Democratic Primary and was defeated by Clinton Young. *Cicchetti*, 2008 WL 619013, at *1. Following his defeat in the primary, defendant ran for re-election in the general election on the Conservative and Independent party lines. *Id*. Young defeated defendant in the November 2007 general election. *Id*.

On November 15, 2007, shortly after the general election, plaintiff attended a fund-raising dinner for Young at a local restaurant, accompanied by the publisher of a newspaper that had published a series of negative articles about defendant. *Id*. Coincidentally, defendant was also present at the same restaurant and, by chance, observed plaintiff attending the mayor-elect's fund-raiser and associating with the publisher of the newspaper that had been critical of his administration. *Id*. The next day, plaintiff received an order to report to defendant's office on the following Monday. *Id*. When plaintiff reported to defendant's office as instructed, defendant accused him of being a traitor and terminated his employment, effective immediately. *Id*.

The jury in this case found that plaintiff's "political activity was a substantial or motivating factor in the decision of defendant Ernest D. Davis to terminate his employment as Fire Commissioner." (Jury Verdict Form Ques. 1(a).) We turn now to the question of whether plaintiff was a policymaker, so that he is not protected by the First Amendment.

**DISCUSSION**

"As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights," *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995), however, the Supreme Court has recognized an exception to this rule where political loyalty is a legitimate criterion for a position. *Branti v. Finkel*, 445 U.S. 507, 517 (1980); *see also Elrod*, 427 U.S. at 367; *and Butler v. N.Y. State Dep't of Law*, 998 F. Supp. 336, 339 (S.D.N.Y. 1998). Employees holding positions for which political loyalty is a requirement, which employees are known as policymakers, "hold their office at the will of their employer, and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity." *Kaluczky*, 57 F.3d at 208. A defendant may raise an employee's status as a policymaker as an affirmative defense to a suit predicated on alleged infringements of the employee's First Amendment rights and the defendant bears the burden of proof on this defense. *Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 103 (W.D.N.Y. 2005). Whether an employee is a policymaker is a question of law for the Court, though it requires a factual inquiry into the nature of the job itself. *Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir. 2007).

For a court to find that "political affiliation is an appropriate requirement" of a specific job, there must be a "rational connection between shared ideology and job performance." *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988). The Second Circuit has set forth several factors to consider in this inquiry: whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

3

*Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994). These factors should be applied to the formal

description of the job at issue, that is, to the inherent powers of the position, rather than the duties

actually performed by plaintiff. *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993).

In our previous Opinions, we found that several factors weighed in favor of a finding that

plaintiff was a policymaker. We noted that:

> The Code of the City of Mount Vernon provides that the Mayor shall appoint a Fire
> Commissioner to serve at his pleasure. MOUNT VERNON, N.Y., CODE § 14. The Fire
> Commissioner "control[s] . . . the government, administration, disposition and
> discipline of the Fire Department, and . . . the officers and members of said
> Department," as well as "the general direction and supervision of the expenditure of
> all moneys appropriated to said Department." *Id*. § 127-a. The Commissioner has
> the authority to hire subordinates, who serve at his pleasure. *Id*. § 127. And the
> Commissioner is empowered to make rules and regulations for the department. *Id*.
> § 127-b. Finally, the Commissioner has authority over fire-department disciplinary
> issues: he prescribes the form in which disciplinary charges must be made and
> conducts hearings on any charges brought against a member of the department. *Id*.
> § 127-e. The Commissioner has subpoena power, as well [as] the power to punish
> Department members by reprimanding them, docking their pay or firing them. *Id*.
> . . . Plaintiff was exempt from civil service protection, *see Vezzetti*, 22 F.3d at 486,
> and was directly appointed by, and served at the pleasure of, an elected official. *See*
> *Alberti* [*v. County of Nassau*], 393 F. Supp. 2d [151 (E.D.N.Y. 2005)] at 170. Given
> the Commissioner's broad rule-making and disciplinary authority, it is fair to say that
> he "controls others" and "influences government programs." *See Vezzetti*, 22 F.3d
> at 486.

*Cicchetti*, 2008 WL 619013, at *3. However, we also noted that it was impossible for us to

determine whether several of the *Vezzetti* factors had been satisfied, given the facts before us.

Specifically, we could not determine "whether the fire commissioner has 'technical competence or

expertise,'[2] 'is authorized to speak in the name of policymakers,' 'is perceived as a policymaker by

the public,' 'has contact with elected officials,' or 'is responsive to partisan politics and political

---

[2] It became clear at trial that both plaintiff and defendant agreed that plaintiff, a
podiatrist, had no special skills or training to be Fire Commissioner.

leaders.' *See Vezzetti*, 22 F.3d at 486." *Id*, at *4.  Because we were unable to determine, based on

the record before us, answers to these questions, we could not rule, as a matter of law, that there was

a "rational connection between shared ideology and job performance." *Savage*, 850 F.2d at 68.

Policymaker status is a question of law for the court, but the inquiry is fact intensive.  Bearing

that in mind, at the conclusion of trial, we presented the jury with a special interrogatory so that the

members of the jury, whose job it is to determine the facts of the case, could provide factual

guidance to the Court in our determination of this legal question.  We asked the jury for findings as

to each *Vezzetti* factor that we had been unable to determine before the trial, with the exception of

whether plaintiff had any special training or expertise relevant to his position as Fire Commissioner,

as it was evident from the trial, and apparently undisputed, that plaintiff had none.  The special

interrogatory presented the following questions to the jury:

> If your answer to Question 1(a)[3] is "Yes," has defendant Ernest D. Davis proved by a
> preponderance of the credible evidence:
>
>> (a) that a person in plaintiff's position as Fire Commissioner would be expected to
>> perform his job duties in response to partisan politics?
>>
>> (b) that it was important that the Fire Commissioner share the political ideology or
>> affiliation of the Mayor?
>>
>> (c) that plaintiff's job duties as Fire Commissioner gave him control of policy in such
>> matters as hiring, instruction and discipline of Fire Department employees?
>>
>> (d) that plaintiff was empowered by the nature of his job duties to speak on behalf of
>> the Mayor or the City of Mount Vernon in matters relating to the Fire Department?
>>
>> (e) that plaintiff, as Fire Commissioner was perceived by the public as a policymaker

---

[3]  Question 1(a) asked the jury to determine whether plaintiff proved by a preponderance
of the credible evidence that his political activity was a substantial or motivating factor in
defendant's decision to terminate plaintiff's employment as Fire Commissioner. (Jury Verdict
Form Ques. 1(a).)  The jury answered this question in the affirmative.

for the City in matters relating to the Fire Department?

(Jury Verdict Form Ques. 4(a)-(e).)  The jury answered "yes" to every one of these questions.  In light of these findings, considered with the Court's findings in our previous Opinions, we can now conclude that the *Vezzetti* factors weigh heavily in favor of a finding that plaintiff was a policymaker. The fact that plaintiff had no special training or expertise relevant to his position as Fire Commissioner is the only factor that does not support a finding of policymaker status.  However, considered in combination with every other factor, each of which has been found to support policymaking status, we can now conclude that plaintiff was a policymaker.

Immediately following the jury's verdict and its responses to the special interrogatories, this Court asked plaintiff's counsel if he would like to make any formal, written submission regarding the policymaker exception.  He declined to do so, but did make two arguments, orally, against a finding that plaintiff was a policymaker.  Plaintiff's counsel argued that: (1) because defendant had testified that a shared ideology between himself and plaintiff was not important, defendant should be precluded from asserting policymaker status as an affirmative defense; and (2) that plaintiff's ideology never changed, as he remained a Democrat throughout, whereas defendant's ideology did change because, after he lost the primary, he ran for Mayor as the nominee of the Conservative and Independent parties, in opposition to the Democratic party nominee, Clinton Young.  We have considered both arguments.  Plaintiff's first argument, that defendant himself did not believe that having a shared ideology with plaintiff was important, is not persuasive because policymaker status is not an issue for decision by a party.  It is a question of law for the Court to decide with, in this case, the guidance of factual findings by the jury relating to the powers and responsibilities of the job in question.  Neither do we find plaintiff's second argument to be persuasive.  The employer,

defendant, is entitled to change his political ideology and doing so does not result in forfeiture of his right to terminate a policymaker whose political ideology does not comport with the employer's new ideology.

In light of our findings in our previous Opinions and the factual findings of the jury, we now hold that, as a matter of law, there was a rational connection between plaintiff's job performance and his shared ideology with the mayor.  Therefore, plaintiff was a policymaker and defendant was entitled to terminate his employment based on plaintiff's political beliefs or associations.

## CONCLUSION

For the foregoing reasons, we conclude that defendant is entitled to the affirmative defense that plaintiff was a policymaker and find that defendant is entitled to judgment as a matter of law. Therefore, we set aside the jury's verdict on plaintiff's First Amendment claim and its award of damages thereon. The Clerk of the Court is directed to enter judgment in favor of defendant, without costs or attorneys' fees for either party.

SO ORDERED.

Dated: White Plains, New York
       April 6, 2009

                                                    _William C. Conner_____
                                                    Sr. United States District Judge

7